**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00404-CMA-MJW

SALVADOR MAGLUTA,

    Plaintiff,

v.

UNITED STATES FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN, and
RON WILEY,

    Defendants.

---

**ORDER REGARDING PARTIAL MOTION TO DISMISS**

---

This matter is before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. # 17.)  For the following reasons, the Motion is GRANTED IN PART AND DENIED IN PART.

**INTRODUCTION**

This is a civil rights lawsuit.  Plaintiff is a prisoner who was convicted of money laundering and obstruction of justice.  (Doc. # 1, ¶ 7.)  He is currently incarcerated at the "Supermax" Penitentiary in Florence, Colorado ("ADX").  (*Id.* at 1.)  Defendants are the U.S. Bureau of Prisons ("BOP"), an agency of the U.S. Department of Justice; Harley Lappin, in his official capacity as Director of BOP; and Ron Wiley, in his individual and official capacities as Warden at ADX.  (*Id.*, ¶¶ 4-6.)

Plaintiff alleges that Defendants violated his constitutional rights by transferring him from a less restrictive prison to ADX, continuing to hold him at ADX without legal justification, improperly processing his legal and personal mail, denying him medical treatment and interfering with his administrative grievances. (*See generally id.*) He pleaded nine claims: (1) Due Process Violations – Transfer to ADX; (2) Due Process Violations – Continued ADX Confinement; (3) Violation of First Amendment Rights – Transfer to ADX; (4) Violation of Free Speech and Association Rights – Continued Confinement at ADX; (5) Violation of Free Speech and Association Rights – Interference with Legal and Non-Legal Mail and Administrative Grievances; (6) Equal Protection Violations – Transfer to ADX; (7) Equal Protection Violations – Continued Confinement at ADX; (8) Eighth Amendment Violations – ADX Confinement; and (9) Fifth Amendment Violations – Administrative Remedies. (*Id.*) Defendants have moved to dismiss claims three through nine for the various reasons explained below.

## FACTUAL ALLEGATIONS

The following factual allegations are drawn from Plaintiff's Complaint. A jury convicted Plaintiff of money laundering and obstruction of justice in 2003. (*Id.,* ¶ 7.) After his conviction, he began to serve a lengthy (over 150-year) sentence at the U.S. Penitentiary in Beaumont, Texas. (*Id.*) In March or April 2003, BOP transferred Plaintiff to the U.S. Penitentiary in Marion, Illinois. (*Id.*) While at Marion, Plaintiff participated in a program known as E-Code, which was intended to "prepare [Plaintiff] for transfer to a less restrictive facility." (*Id.,* ¶ 8.) Plaintiff also participated in other unnamed programs

at Marion (the significance of these other programs is unclear) and does not appear to have been particularly disruptive or problematic while incarcerated there.  (*Id.,* ¶¶ 9, 10 and 14.)  In 2006, BOP re-designated Marion as a lower security institution.  (*Id.,* ¶ 11.)  As a result of the change, certain inmates, including Plaintiff, were transferred to other penitentiary facilities.  (*Id.,* ¶ 11-12.)

Plaintiff's transfer took him to ADX – the most secure and restrictive prison in the federal system.  (*Id.,* ¶ 15.)  The transfer to ADX imposed more severe restrictions and conditions on Plaintiff's confinement than he had at Marion.  (*Id.,* ¶¶ 15-21.)  For example, there is no intermingling of the prison population at ADX; inmates remain locked in their cells alone for most of the day.  (*Id.*)  Plaintiff alleges that his transfer to ADX came without notice or warning and, unlike other prisoners who completed the E-Code Program, Defendants BOP and Lappin transferred Plaintiff to a more restrictive facility instead of a less restrictive facility.  (*Id.,* ¶¶ 25-28 & 31-33.)  Plaintiff alleges that Defendants BOP and Lappin transferred him notwithstanding recommendations from prison officials that he be transferred to a less restrictive facility.  (*Id.,* ¶ 30.)  Plaintiff claims that by continuing to hold him at ADX, Defendant Wiley has also improperly ignored such recommendations.  (*Id.*)  Plaintiff remains at ADX today.

Plaintiff alleges that he has filed "numerous" administrative grievances with prison officials during his incarceration.  (*Id.,* ¶ 47.)  His description of these grievances is vague at best:  he does not say what the grievances relate to, when he filed them or what their outcome was, except to say that Defendants acted slowly in responding or

completely failed to respond in some cases. (*Id.,* ¶¶ 44-50.) Plaintiff alleges that Defendants' delay and failure to respond to his grievances have caused him problems in obtaining adequate legal relief in the court system. (*Id.*, ¶¶ 48-49.) Plaintiff also alleges that prison personnel have opened his legal mail outside of his presence, which deviates from standard BOP procedures and further interferes with his administrative grievances. (*Id.,* ¶ 40.) Plaintiff alleges that Defendants transferred him to and continue to keep him at ADX, and interfere with his mail and his administrative grievances in retaliation for other grievances Plaintiff has allegedly filed. (*Id.,* ¶¶ 66-67, 70-71 and 80.)

## PLAINTIFF'S CLAIMS AND DEFENDANTS' MOTION

Plaintiff's first two claims allege that Defendants violated his right to due process by transferring him to and continuing to confine him at ADX.[1] Claims three through five revolve around Defendants' alleged retaliation for Plaintiff's administrative grievance activity. Plaintiff also pleads claims for violation of equal protection based on his transfer to and continued confinement at ADX (claims six and seven). He also pleads a claim for violation of the Eighth Amendment's prohibition of cruel and unusual punishment based on the restrictive conditions at ADX and Defendants' alleged withholding of medical treatment (claim eight). Finally, Plaintiff pleads a claim based on Defendants' continued, alleged interference with Plaintiff's administrative grievances, which Plaintiff claims violates his due process right to access the courts (claim nine).

---

[1] These claims are not at issue in the current motion.

Defendants move to dismiss claims three through nine. (Doc. # 17.) They argue that Plaintiff has not pleaded facts sufficient to show that Defendants' decisions to transfer and confine Plaintiff at ADX were made in retaliation for Plaintiff's protected activities. (*Id.* at 4-6.) Similarly, Defendants contend that Plaintiff cannot plead facts to show how their alleged interference with Plaintiff's mail and his administrative grievances were retaliatory. (*Id.*) They also argue that Plaintiff cannot state a claim for violation of equal protection because he has not pleaded facts to indicate that he was similarly situated to other inmates who received different transfers or treatment. (*Id.* at 7-9.) They further contend that Plaintiff has not shown a violation of his Eighth Amendment rights because he has not stated facts showing that Defendants intentionally subjected him to inhumane conditions of confinement or refused to provide adequate medical care. (*Id.* at 9-12.) Defendants also argue that Plaintiff has not stated a plausible access to the courts claim because he has not shown that Defendants' alleged interference with his mail and delay in responding to his administrative grievances have caused him a cognizable injury. (*Id.* at 12-14.) Alternatively, Defendants contend that Plaintiff has not pleaded facts showing how Defendant Wiley personally participated in claims five, eight and nine. (*Id.* at 6, 12 and 14.) Thus, they argue that the Court should dismiss those claims against Defendant Wiley in his individual capacity. (*Id.*) Finally, they argue that Defendant Wiley has qualified immunity from claims one and three through nine. (*Id.* at 14-15.)

## STANDARD OF REVIEW

Federal Rule 12(b)(6) allows a court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To "state a claim," a plaintiff need not plead "detailed factual allegations," but he must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009) ("The complaint 'does not need detailed factual allegations,' but the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (internal citations omitted) (alterations in original). The degree of factual detail required at the pleading stage depends on the context of the case. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008). However, the same pleading standard applies under Federal Rule 12(b)(6) whether the claim sounds in tort, contract, statute or arises under the Constitution. *Id.* In any event, a formulaic recitation of the legal elements is not enough to state a plausible claim for relief. *Twombly*, 550 U.S. at 555.

In judging whether a complaint meets this standard, a court should accept as true all well-plead factual allegations and construe them in a light favorable to the non-movant. *Grossmen v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). However, the Court does not need to accept unsupported, conclusory statements couched as factual allegations. *See Forest Guardians v. Forsgren*, 478 F.3d 1149, 1152 (10th Cir. 2007).

## ANALYSIS

**I.   CLAIMS THREE THROUGH FIVE**

In claims three through five, Plaintiff asserts that Defendants perpetrated their alleged unconstitutional acts in retaliation for Plaintiff's constitutionally protected grievance activity.[2]  However, Plaintiff has failed to plead any facts to demonstrate that Defendants took any action because of a retaliatory motive.  This deficiency requires dismissal of Plaintiff's third, fourth and fifth claim.

   A.   Applicable Law

Prison officials may not retaliate against a prisoner because he exercises his constitutional rights.  *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). To state a claim for retaliation in a First Amendment context, a plaintiff must plead facts indicating that he can plausibly prove three elements at trial:  (1) he engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' actions were substantially motivated by the plaintiff's protected activity.  *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  The third element is especially critical in this case.  A plaintiff must allege facts to show that retaliation was the animus behind the defendants' actions, *i.e.*, a plaintiff must show that "but for" a desire to retaliate, the defendants would not have acted as

---

[2]   Although Plaintiff's sixth and seventh claim sound in equal protection, Plaintiff still alleges that Defendants transferred him to and continue to hold him at ADX in retaliation for his protected grievance activity.  (Doc. # 1, ¶¶ 84 and 90.)

they did. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998); *Smith*, 899 F.2d at 949-50.

      B.      <u>Plaintiff Has Not Pleaded Facts to Show a Retaliatory Motive</u>

Plaintiff filed multiple administrative grievances and Defendants do not dispute that such grievances constitute protected activity under the Constitution. Nor do Defendants dispute (for purposes of this Motion, anyway) that Plaintiff's transfer to and confinement in ADX (claims three and four) or interference with his mail and grievances (claim five) might chill an ordinary person from pursuing his administrative remedies. However, Defendants contend, and the Court agrees, that Plaintiff has not pleaded any facts in his Complaint that would permit the Court to plausibly infer that Plaintiff's transfer to and confinement in ADX was in retaliation for Plaintiff having filed multiple grievances. Nor has Plaintiff provided any facts to support his contention that the alleged interference with his mail and grievances is likewise in retaliation for Plaintiff's protected activities.

Regarding his third claim, Plaintiff alleges that Defendants transferred him to ADX in retaliation for grievances Plaintiff filed while incarcerated in Marion (and perhaps Beaumont).[3] But, Plaintiff has pleaded no facts (*e.g.,* statements by Defendants or unusual deviations from prisoner transfer protocol) to support his conclusory allegation of a retaliatory motive. The only "fact" that Plaintiff has to support claim three is the timing of his transfer to ADX. He argues that because Defendants BOP and Lappin

---

[3] Plaintiff has not provided any dates for his alleged protected activities. However, the Court will view the facts in a light favorable to Plaintiff and assume that at least some of Plaintiff's administrative grievances preceded his transfer.

transferred him after he filed certain grievances, the timing alone implies a retaliatory motive on Defendant BOP and Lappin's part. However, Plaintiff's theory amounts to nothing more than speculation and, as is clear from *Twombly* and its Tenth Circuit progeny, Plaintiff's own speculation regarding his transfer to ADX does not meet the plausibility standard.

To establish a *plausible* claim for retaliation, Plaintiff needs to do more than simply state that he filed administrative grievances, was subsequently transferred and hope this Court will fill in the rest of the story. Indeed, Plaintiff likely had knowledge of the dates and outcomes of his administrative grievances at the time he filed this lawsuit and these facts might provide the additional information needed to state a plausible claim, but Plaintiff failed to include such information in his Complaint. Thus, he has pleaded no information from which the Court may infer that transfer to ADX would not have happened *but for* Plaintiff's protected grievance activity. *See Peterson*, 149 F.3d at 1144-45 (holding that allegations of retaliation must be supported by evidence rather than speculation).

Moreover, other factual allegations negate Plaintiff's speculation that Defendants transferred him to ADX in retaliation for filing administrative grievances. In his Complaint, Plaintiff concedes that re-designation of the Marion penitentiary lead to Plaintiff's transfer, at least in part. (Doc. # 1, ¶ 12.) The fact that Marion was re-designated, thus necessitating a transfer of Plaintiff, is an undisputed fact that directly

9

contradicts Plaintiff's unsupported conclusion that Defendants transferred him to ADX in retaliation for his activities. Thus, the Court will dismiss claim three.

A similar analysis applies to claims four and five, which also require Plaintiff to raise a plausible issue for discovery on the retaliatory motive element. Instead of facts, Plaintiff merely repeats the unsupported, conclusory allegation that Defendants have kept him at ADX and interfered with his mail and administrative grievances in retaliation for Plaintiff's earlier grievances. Once again, Plaintiff can identify no facts that would permit the Court to infer the required retaliatory motive. Thus, claims four and five should also be dismissed.

In short, Plaintiff's third, fourth and fifth claims each ask this Court to cross an inferential chasm that is far too lengthy to bridge, even at this early pleading stage. These claims constitute exactly the type of unsupported, speculative pleading that the Supreme Court intended to discourage in *Twombly.* Thus, the Court will dismiss claims three through five.[4]

## II.    CLAIMS SIX AND SEVEN

Plaintiff alleges that Defendants violated his equal protection rights by transferring him to ADX and holding him there, whereas other Marion inmates with records similar to Plaintiff's were transferred to less restrictive facilities.

---

[4] Because the Court finds that Plaintiff cannot establish an essential element of his retaliation claims, the Court will dismiss these claims against all Defendants and it need not address Defendant Wiley's alternative arguments for dismissal of claim five.

A.   Applicable Law

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). In a case such as this, where no suspect class is involved, to state an equal protection claim, a plaintiff must show that (1) he is similarly situated to other inmates who were treated differently and (2) the difference in treatment bears no rational relation to legitimate penological interests. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). Because of the wide discretion afforded to prison officials and the many relevant factors these officials may consider when dealing with inmates, an inmate who is not part of a suspect class faces a difficult task to state an equal protection claim. First, there is a presumption in favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 Fed. Appx. 715, 720 (10th Cir. 2003). Second, the requirement to show that an inmate is "similarly situated" to other inmates is arduous, if not impossible, as the Tenth Circuit Court of Appeals noted in *Templeman v. Gunter*. *See* 16 F.3d 367, 371 (10th Cir. 1994) ("it is 'clearly baseless' to claim that there are other inmates who are similar in every relevant respect"); *see also Fogle*, 435 F.3d at 1261 (quoting *Templeman* in affirming dismissal of an equal protection claim).

B.   Plaintiff Has Not Alleged That He Was Similarly Situated to Other Inmates.

Plaintiff claims that he is similarly situated and had a similar conviction, sentence, and prison record as other inmates who completed the E-Code Program at Marion, including his co-defendant Augusto Guillermo Falcon. He claims that by transferring

11

him to and continuing to hold him at ADX, Defendants treated him differently than these other similarly situated inmates. (Doc. # 1, ¶¶ 32-33.) Defendants respond that Plaintiff has not alleged enough facts to demonstrate that he is similarly situated in every relevant aspect to other Marion inmates who received different transfers or assignments. Defendants further argue that, even if Plaintiff was similarly situated to other Marion inmates, Defendants have a rational basis for treating Plaintiff differently. The Court agrees with Defendants' first argument and need not reach the second.

As *Templeman* and *Fogle* make clear, Plaintiff needs to plead relatively specific facts that flesh out how he was similarly situated to other prisoners in all relevant fields that Defendants may have used when deciding when and where to transfer inmates. Only if Plaintiff can plead facts that permit this Court to plausibly infer that he is like another group of inmates in nearly every single penological point of interest, will his claims withstand a motion to dismiss. To meet this burden, Plaintiff alleges that he participated in the E-Code Program with other prisoners and he, then, includes a wholly conclusory allegation that other inmates had similar convictions, sentences, and prison records to his own. But these allegations do not nudge his equal protection claims into the realm of plausibility under the stringent standard expressed in *Templeman*. The mere fact that Plaintiff participated in the E-Code program does not make Plaintiff similarly situated to other E-Code participants for purposes of an equal protection claim under Tenth Circuit precedent. Because Defendants have broad discretion with respect to decisions on where, when, and how to transfer and hold a prisoner, there are simply

too many variables for Plaintiff's rather generic allegations of similarity to survive a motion to dismiss.  *See Templeman*, 16 F.3d at 367.  For example, Defendants may consider slight differences in an inmate's history, personality, conviction, sentencing, etc.  Plaintiff has not included any factual allegations that would show that he is similar to other inmates in these relevant aspects.  Thus, claims six and seven will be dismissed.

## III.   CLAIM EIGHT

Plaintiff's Eighth Amendment claim also fails to state a plausible claim for relief because Plaintiff has not alleged any facts demonstrating that Defendants have subjected him to cruel and unusual punishment.

### A.   Applicable Law

Prisons must maintain "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 831 (1994).  However, "humane" does not necessarily mean "comfortable."  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

A prisoner must plead both an objective component and subjective component to state a claim for violation of the Eighth Amendment.  *See Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991).  Objectively, a prisoner must show that prison conditions somehow deprived him of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  Alternatively, a prisoner alleging that officials have withheld medical treatment must show that the medical need had been diagnosed by a physician as

requiring treatment or was so obvious that even a lay person would recognize that a doctor's help was required.  *See Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

Subjectively, a prisoner must show that prison officials acted wantonly, with ill will or a culpable state of mind.  *See, e.g., Wilson*, 501 U.S. at 502.  Thus, to state a claim, a plaintiff must plead facts indicating that officials were aware of a substantial risk of serious harm, but intentionally or recklessly failed to take action.  *See Garrett v. Stratman*, 254 F.3d 946, 949-50 (10th Cir. 2001); *Farmer*, 511 U.S. at 837.

  B. <u>Plaintiff Fails to Plead the Objective Component of an Eighth Amendment Claim</u>.

Plaintiff's eighth claim fails to satisfy the objective component described above.  Plaintiff alleges that conditions at ADX (solitary confinement and severe restrictions on interactions with other prisoners) has led to a "significant deterioration of [his] mental condition, a worsening of his depression, and other forms of emotional and mental injury and impairment."  (Doc. # 1, ¶ 97.)  However, he provides no allegations to demonstrate how the conditions at ADX, even if lonely or uncomfortable, fail to provide basic human necessities.  All Plaintiff can muster to support his claim that the conditions at ADX violate the Eighth Amendment is that they are the most harsh and uncomfortable of any penitentiary in the federal system.  However, these facts alone do not state a plausible claim under the Eighth Amendment.  *See Hill*, 75 Fed. Appx. at 721 (affirming dismissal of Eighth Amendment claim by prisoner at ADX on grounds that isolation and sensory deprivation as implemented there did not amount to cruel and unusual punishment).

ADX is a prison, after all, and confinement is intended to punish inmates, not coddle them.

Plaintiff also fails to plead any facts giving rise to a plausible claim based on Defendants' alleged failure to treat his mental health impairment. Plaintiff has not alleged facts from which the Court could plausibly infer that his mental health condition was diagnosed as requiring treatment or was so obvious that a lay person would recognize the need for help. Further, Plaintiff has not shown that his mental health presented substantial risk of serious of harm to himself or others. Indeed, Plaintiff sheds no light at all on the severity of his alleged impairments or the nature of the required treatment withheld by Defendants. Such information would presumably have been within Plaintiff's scope of knowledge at the time he filed this lawsuit, but he has not included it in his Complaint.

Plaintiff has not pleaded a plausible claim for cruel and unusual punishment based on either prison conditions or a withholding of required medical treatment. Because Plaintiff has failed to demonstrate the objective element of an Eighth Amendment claim, the Court need not address the subjective element before dismissing Plaintiff's eighth claim.[5]

---

[5] Because the Court finds that Plaintiff cannot establish an essential element of his cruel and unusual punishment claim, the Court will dismiss this claim against all Defendants and it need not address Defendant Wiley's alternative arguments for dismissal of claim eight.

### IV.   CLAIM NINE

Conversely, Plaintiff has plead facts to sustain his ninth claim, at least as against Defendants in their official capacities.  However, Plaintiff has not alleged any facts that demonstrate personal participation by Defendant Wiley.  Thus, the Court will allow Plaintiff's ninth claim to proceed against all Defendants, including Lappin and Wiley in their official capacities, but it will dismiss the claim against Defendant Wiley in his individual capacity.

   A.   Applicable Law

Prisoners have a due process right to access the courts to vindicate their appellate, habeas corpus and civil rights.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 579-80 (1974).  Thus, prison officials may not hinder a prisoner's effort to pursue a legal claim in these areas.  *Cf. Lewis v. Casey*, 518 U.S. 343, 351 (1996).

   B.   Plaintiff Sufficiently Pleads an Injury to a Protected Legal Interest.

Plaintiff alleges that Defendants have delayed in responding or failed to respond to his administrative grievances and thereby precluded him from pursuing certain legal claims in court.  Defendants argue that Plaintiff's allegations are too conclusory and speculative to support a plausible claim for relief.  They contend that Plaintiff has not shown an injury that would support a claim for denial of access to the courts.  The Court disagrees.

In contrast to Defendants' arguments, Plaintiff has done more than plead a formulaic recitation of the elements of his access to courts claim. He alleged that Defendants have substantially interfered with or even ignored his administrative grievances. Plaintiff further alleges that the delays and other problems caused by Defendants' treatment of his administrative grievances have deprived Plaintiff of the ability to exhaust his administrative remedies, thereby restricting Plaintiff from bringing his complaints to court. This amounts to an impermissible hindrance of Plaintiff's right to access the courts. Thus, if the Court accepts these allegations as true (as it must on a motion to dismiss), they identify an injury that is sufficiently plausible to survive Defendants' Motion. Unlike Plaintiff's retaliation claims, which lacked facts to support the necessary retaliatory motive, this claim does contain a sufficient amount of factual information to allow Defendants to identify the legal theory and grounds upon which Plaintiff's claim rests, at least as it relates to Defendants in their official capacities. Therefore, the access to courts claim is sufficient to state a plausible claim for relief and Defendants' Motion is denied on this issue.[6]

---

[6] At this point, the Court declines to address Defendant Wiley's claim of qualified immunity. There is simply not enough information in the record on which the Court can make a determination on this issue. Thus, that aspect of the Motion to Dismiss is denied without prejudice. Defendant Wiley may raise the issue again after developing the factual record.

B.     Plaintiff Does Not State a Claim Against Defendant Wiley in His Individual Capacity.

Defendant Wiley also moved to dismiss the ninth claim against him in his individual capacity because Plaintiff did not allege Defendant Wiley's personal participation in the alleged interference with Plaintiff's administrative grievances. The Court agrees.

There is no "strict liability" for supervisors under Section 1983. *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991). Thus, to state a *Bivens* claim against Defendant Wiley in his individual capacity, Plaintiff must allege facts to show that it is plausible that Defendant Wiley personally participated in or personally directed or encouraged the alleged malfeasance. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).

In this case, Plaintiff has presented no factual allegations from which the Court can plausibly infer that Defendant Wiley personally participated in the alleged interference with Plaintiff's administrative grievances. Plaintiff has alleged nothing more than conclusory statements to the effect that Defendant Wiley acted in a supervisory role. These unsupported allegations are woefully insufficient to state a claim against Defendant Wiley in an individual capacity. Thus, claim nine against Defendant Wiley in his individual capacity will be dismissed.

## CONCLUSION

Plaintiff's retaliation claims (three, four and five) do not contain sufficient factual allegations from which the Court may plausibly infer the critical retaliatory motive.

Likewise, Plaintiff's equal protection claims (six and seven) fail to adequately plead that Plaintiff is similarly situated to other prisoners in all relevant aspects. Plaintiff's cruel and unusual punishment claim (claim eight) fails to allege the necessary objective component required under the Eighth Amendment. Conversely, Plaintiff has plead enough factual detail on his access to the courts claim (claim nine) to properly put Defendants on notice of this due process claim. However, Plaintiff has failed to allege personal participation by Defendant Wiley.

Accordingly, Defendants' Motion to Dismiss (Doc. # 17) is GRANTED IN PART AND DENIED IN PART.

Plaintiff's claims three through eight are DISMISSED as against all Defendants; and

Claim nine is DISMISSED as against Defendant Wiley in his individual capacity. However, Plaintiff may proceed on claims one and two, and claim nine against Defendants BOP and Lappin and Defendant Wiley in his official capacity.

DATED:  May   27  , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge